| | |
|---|---|
| CARA KASPER, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>v.<br><br>RELIANT CAPITAL SOLUTIONS, LLC,<br><br>        Defendant. | Case No.: 19-cv-98<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, Chapters 421-427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Cara Kaper (a.k.a. Cara Schoczek) is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA in that she engaged in a consumer credit transaction, namely an education loan (the "student loan"), for personal, family, or household purposes. Wis. Stat. § 421.301(17).

6. Defendant Reliant Capital Solutions, LLC ("Reliant") is a foreign limited liability company with its principal place of business located at 670 Cross Pointe Road, Gahanna, OH 43230.

7. Reliant is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Reliant is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. Reliant is licensed as a "Collection Agency" by the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

10. Reliant is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. At some point prior to December 19, 2017, Plaintiff entered into one or more consumer credit transactions with the United States Department of Education ("DoE") for a student loan. Upon information and belief, the student loan was a Federal Perkins Loan. *See* 34 CFR 674.

12. Federal Perkins Student Loan agreements are "consumer credit transactions" pursuant to the WCA. Wis. Stat. §§ 421-427; *see also Patzka v. Viterbo Coll.,* 917 F. Supp. 654, 659 (W.D. Wis. 1996).

2

13. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

14. Plaintiff's student loan contracts were for "services," namely educational services.

15. Plaintiff's student loans, as are all student loans, are extensions of "credit." Plaintiff obtained student loans to pay for tuition, fees, and educational materials. Wis. Stat. § 421.301(14) ("'Credit' means the right granted by a creditor to a customer to defer payment of debt, to incur debt and defer its payment or to purchase goods, services or interests in land on a time price basis.").

16. That the lender placed the loan for collection with Reliant, and that Reliant sent Plaintiff debt collection letters establishes that the lender intended repayment of the debt.

17. Pursuant to the loan agreement, the loan was payable in installments. Under a standard student loan contract, the consumer incurs an obligation to pay the balance in monthly installments, over the contract's term, and payments usually begin after the consumer has graduated or otherwise left school.

18. Moreover, the student loan agreement provides for the accrual of interest, which is a "finance charge." Wis. Stat. § 427.301(20)(a) ("Finance charge" includes "Interest, time price differential and any amount payable under a discount or other system of additional charges").

3

19. On or about February 2, 2018, Reliant mailed a debt collection letter to Plaintiff regarding an alleged student loan debt. A copy of this letter is attached to this complaint as Exhibit A.

20. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

21. Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

22. The header in Exhibit A contains the following representation:

| ACCOUNT NO | PRINCIPAL BAL | INTEREST |
|---|---|---|
| ▆▆▆004 | $3,322.12 | $271.52 |
| PENALTY CHARGES | FEES & COSTS | CURRENT BAL |
| $0.00 | $874.69 | $4,468.33 |
| DO NOT SEND CASH. | AMOUNT PAID: | |

23. By itemizing "PENALTY CHARGES," which are distinct from "INTEREST" as well as "FEES & COSTS," Exhibit A implies that Plaintiff's loan may subject to such charges. *See Tylke v. Diversified Adjustment Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one.").

24. Additionally, the body in Exhibit A additionally states:

As of the date of this letter, you owe $4,468.33. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call (877) 404-8853.

4

25. The statement that "Because of interest, late charges, and other charges that may vary from day to day, the amount you pay may be greater" is a material representation that Defendant or the creditor could add late charges to the balance. *See, e.g.*, *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 368 (7th Cir. 2018).

26. Finally, Exhibit A also includes the following representation:

| Account # | Principal | Interest | Collection Costs | Other Charges | Balance |
|---|---|---|---|---|---|
| ████9044 | $1,860.12 | $152.04 | $489.76 | $0.00 | $2,501.92 |
| ████9054 | $1,462.00 | $119.48 | $384.93 | $0.00 | $1,966.41 |

ACCOUNT INFORMATION

27. By once again itemizing "Other Charges," which are distinct from both "Interest" as well as "Collection Costs," Exhibit A yet again indicates that Plaintiff's loan may be subject to late charges.

28. On the whole, Exhibit A indicates that Plaintiff's Federal Perkins student loan debt is in default, and that the entire balance of the loans is due to the creditor.

29. Exhibit A represents that, at the time Exhibit A was mailed, U.S. Department of Education had accelerated the balance of Plaintiff's Federal Perkins loan.

30. Upon information and belief, at the time Exhibit A was mailed, Plaintiff's Federal Perkins loan was in default, and the U.S. Department of Education had accelerated the balance.

31. Despite being accelerated, Exhibit A, as described above indicates that Plaintiff's loan may be subject to late charges.

32. The representation that Defendant or the creditor could add late charges to the balance of the Plaintiff's defaulted Federal Perkins student loan debt after the debt was accelerated is false, deceptive, and misleading. *See, e.g., Hovermale v. Immediate Credit Recovery, Inc.*, No. 15-cv-5646, 2016 U.S. Dist. LEXIS 102206, at *8 (D.N.J. Aug. 4, 2016) ("The Court agrees with Plaintiff that, because Plaintiff was in default on a Federal Perkins

5

Loan, Defendant did not have the lawful right to add late charges at the time it sent the Letter to Plaintiff.") (citing 34 C.F.R. § 674.31(b)(5)(i); 34 C.F.R. § 674.43(b)(2)); *see also Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 793 n.1 (7th Cir. 2003) (collecting cases holding that "post-acceleration late fees are unlawful.").

33. As explained in *Hovermale*, 2016 U.S. Dist. LEXIS 102206, at *8, the authority to add late fees to Federal Perkins loan debts arises from 34 C.F.R. § 674.43(b)(2):

> (2)
> Subject to § 674.47(a), the institution may assess a late charge for loans made for periods of enrollment beginning on or after January 1, 1986, during the period in which the institution takes any steps described in this section to secure –
>
> (i) Any part of an **installment** payment not made when due, or
>
> (ii) A request for deferment, cancellation, or postponement of repayment on the loan that contains sufficient information to enable the institution to determine whether the borrower is entitled to the relief requested.

34 C.F.R. § 674.43(b)(2) (emphasis added).

34. When a loan is accelerated, the entire balance becomes "due and payable," *see* Exhibit A, and there is no "installment payment" that can become due.

35. Once Plaintiff's Federal Perkins loan entered default and became accelerated, there was no "enrollment period" during which there could be any attempt to secure a request for deferment, cancellation, or postponement of repayment because the loan is not in default if the student is enrolled. *See* U.S. Department of Education Federal Student Aid Office Handbook, "Perkins Repayment Plans, Forbearance, Deferment, Discharge, and Cancellation," at 6-132 (2015) (available at, https://ifap.ed.gov/fsahandbook/attachments/1516FSAHbkVol6Ch4.pdf) (accessed: Dec. 5, 2018); *see also,* 34 CFR 668.4 (defining "Payment Period" for all federal aid programs); *see also Hovermale*, 2016 U.S. Dist. LEXIS 102206, at *8.

36. Further, Exhibit A attempts to collect "FEES & COSTS" in the amount of $874.69.

37. Exhibit A does not explain what these "FEES & COSTS" are, nor does Exhibit A state whether these "FEES & COSTS" were imposed after or before the debt was referred to Defendant for collection.

38. The consumer would have no way to know whether the "FEES & COSTS" were legitimate, nor would she know whether "FEES & COSTS" could continue to accrue, or in what amount.

39. 34 C.F.R. § 674.45(e)(3) imposes a cap on "reasonable collection costs," for loans placed with a collection firm, which caps those costs based on a percentage of the "principal, interest, and late charges collected."

40. The consumer would have no way of knowing whether the "FEES & COSTS" Exhibit A attempts to collect comprises: reasonable collection fees imposed as a percentage of the principal, interest, and late charges; late charges imposed by the institution; or a combination of collection fees and late charges. *See, e.g., Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565-66 (7th Cir. 2004); *Acik v. I.C. Sys.*, 640 F. Supp. 2d 1019, 1023-26 (N.D. Ill. 2009).

41. Plaintiff was confused and misled by Exhibit A.

42. The unsophisticated consumer would be confused and misled by Exhibit A.

43. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

7

## The FDCPA

44. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D.

Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

45. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

46. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

47. 15 U.S.C. § 1692e(2)(a) specifically prohibits "The false representation of— the character, amount, or legal status of any debt.

9

48. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

49. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

50. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

51. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

### *The WCA*

52. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

53. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

54. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

55. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also

10

competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

56. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

57. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

58. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

59. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

60. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

11

61. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

62. The Wisconsin Department of Financial Institutions, which is tasked with the regulation of licensed debt collectors, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.")

## COUNT I – FDCPA

63. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

64. Exhibit A falsely states that the debt may be subject to late charges.

65. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), 1692f, and 1692f(1).

## COUNT II – FDCPA

66. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

67. Exhibit A provides a confusing and misleading itemization of the "FEES & COSTS."

68. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f.

## COUNT III – WCA

69. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

70. Defendant is licensed as a collection agency by the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

71. <u>Exhibit A</u> falsely states that the debt may be subject to late charges.

72. <u>Exhibit A</u> violates the FDCPA.

73. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

74. Plaintiff brings this action on behalf of two classes.

75. Class I ("Nationwide Class") consists of (a) all natural persons in the United States of America (b) who were sent a collection letter by Reliant (c) attempting to collect a "defaulted student loan or grant overpayment debt," (d) which stated that the "entire balance as indicated above is due and payable," (e) and also stated that the loan "may require you to pay . . . late charges," (f) where the student loan was a Federal Perkins loan, (g) and the letter was mailed between January 16, 2018 and January 16, 2019, inclusive, (f) and was not returned by the postal service.

76. Class II ("Wisconsin Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter by Reliant (c) attempting to collect a "defaulted student loan or grant overpayment debt," (d) which stated that the "entire balance as indicated above is due and payable," (e) and also stated that the loan "may require you to pay . . . late charges," (f) where the student loan was a Federal Perkins loan, (g) and the letter was mailed between January 16, 2018 and January 16, 2019, inclusive, (f) and was not returned by the postal service.

77. Each class is so numerous that joinder is impracticable.

78. Upon information and belief, there are more than 50 members of each class.

79. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibit A</u> violates the FDCPA and/or the WCA.

80. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

81. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

82. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

83. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 16, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110

14

(414) 482-8000  
(414) 482-8001 (fax)  
jblythin@ademilaw.com  
meldridge@ademilaw.com  
jfruchter@ademilaw.com  
bslatky@ademilaw.com